UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Docket No.: 04-10992 GAO

*****************************)
STUART TARMY and )
OTHERS SIMILARLY SITUATED ) MAGISTRATE JUDGE RBC
        Plaintiffs )
) **COMPLAINT**
v. )
)
CHARLES RIVER SYSTEM, INC. d/b/a ) RECEIPT # 56008
CHARLES RIVER DEVELOPMENT, ) AMOUNT $150
        Defendant ) SUMMONS ISSUED yes
) LOCAL RULE 4.1
*****************************) WAIVER FORM
                                  MCF ISSUED
                                  BY DPTY. CLK EOM
**Introduction**             DATE 6/18/04

1. This is a cause of action arising out of the Plaintiff, Stuart Tarmy's former employment with the Defendant, Charles River Development. Mr. Tarmy alleges that Charles River Development failed to pay him wages in violation of the Massachusetts Wage Act, G.L. c. 149, and breached the contract between the parties causing Mr. Tarmy financial harm and loss.

**Jurisdiction**

2. The court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 (a)(1) for claims arising between citizens of different states, and of which amount in controversy exceeds $75,000.00.

3. Under the doctrine of supplemental jurisdiction, this court has jurisdiction over Mr. Tarmy's claim arising under Massachusetts state law.

## Venue

4. Venue is proper in District of Massachusetts, the judicial district in which the claim has arisen, pursuant to 28 U.S.C. § 1391 (b).

## Parties

5. Stuart Tarmy ("Tarmy") is an individual residing at 53 Musano Court, West Orange, New Jersey.

6. Charles River System, Inc. d/b/a Charles River Development ("CRD") is a Massachusetts corporation with a usual place of business located at 7 New England Executive Park, Burlington, Middlesex County, Massachusetts 01803.

## Facts

7. On or about June 22, 2001, pursuant to a written agreement (hereinafter the "Agreement"), CRD hired Tarmy as Vice President of Worldwide Sales & Marketing. A true and accurate copy of the Agreement is incorporated herein by this reference and attached hereto as Exhibit "A".

8. The Agreement attached hereto as Exhibit "A" was negotiated by CRD and Tarmy prior to the execution of the same by the parties. In particular, CRD and Tarmy negotiated at length the wages CRD would pay Tarmy, including Tarmy's base salary, the amount of stock options and the percentage of commissions.

9. Pursuant to the Agreement, CRD committed to pay Tarmy the following wages in three parts: a base salary, sales commissions of between 1% and 1.22% of new sales, and stock options in the amount of 0.5% (one half of one percent) of CRD's

outstanding shares to be granted on Tarmy's date of hire with a second grant of 0.5% of CRD's outstanding shares due on Tarmy's first anniversary.

10. In reliance of the Agreement, which also provided for relocation costs, Tarmy and his wife relocated to Massachusetts and sold their home in New Jersey.

11. Tarmy's date of hire with CRD was July 11, 2001.

12. During the course of his employment, Tarmy worked continuously, diligently and effectively on behalf of CRD.

13. On or about November 15, 2001, Peter Lambertus, the President and Chief Executive Officer of CRD, advised Tarmy that he was not emotionally ready to delegate his authority to Tarmy, that he was relieving Tarmy of his responsibilities, and that CRD was, without cause, terminating Tarmy's employment.

14. As result of his termination, Tarmy lost substantial amounts of money, including but not limited to, moving expenses associated with his return back to New Jersey and the winding-up of his affairs in Massachusetts. Furthermore, Tarmy was unable to recoup his losses from the sale of his home in New Jersey, and moving expenses not reimbursed by CRD.

15. After his termination by CRD, Tarmy was also forced to forgo employment with another company because CRD insisted on enforcing a non-compete agreement between the parties. As a result, Tarmy lost additional income and medical benefits.

16. Despite having the securities and funds to pay and Tarmy's repeated demands, CRD has failed and refused to pay Tarmy.

17. Others similarly situated have also worked for CRD and not received the proper compensation as required by law.

18. Tarmy has satisfied all prerequisites and conditions precedent necessary to entitle him to seek remedy against CRD by this action.

19. Attached hereto as <u>Exhibit "B"</u> is a letter from the Office of the Attorney General authorizing Tarmy to pursue his claim for unpaid wages through a civil lawsuit.

## COUNT I
(Tarmy v. CRD)
M.G.L. c. 149

20. Tarmy repeats and re-alleges the allegations set forth in Paragraphs 1 through 19 above and incorporates them by reference herein.

21. CRD promised to pay wages to Tarmy.

22. CRD has failed and refused to pay the wages due and owing Tarmy in violation of Massachusetts General Laws Chapter 149.

23. As a result of CRD's violation of G.L. c. 149, Tarmy has incurred harm and loss in an amount in excess of $75,000.00 to be determined.

## COUNT II
(Others Similarly Situated v. CRD)
M.G.L. c. 149

24. Tarmy repeats and re-alleges the allegations set forth in Paragraphs 1 through 23 above and incorporates them by reference herein.

25. CRD promised to pay wages to others similarly situated to Tarmy.

26. CRD has failed and refused to pay others similarly situated to Tarmy the wages due and owing them in violation of Massachusetts General Laws Chapter 149.

27. As a result of CRD's violation of G.L. c. 149, others similarly situated to Tarmy have incurred harm and loss in an amount in excess of $75,000.00 to be determined.

## COUNT III
(Tarmy v. CRD)
Breach of Contract

28. Tarmy repeats and re-alleges the allegations set forth in Paragraphs 1 through 27 above and incorporates them by reference herein.

29. CRD entered into an unambiguous and enforceable contract that required CRD to pay Tarmy wages in the form of CRD securities and commissions.

30. In breach of its contract with Tarmy, CRD has failed and refused to pay Tarmy wages due and owing him.

31. As a result of CRD's breach of its contract, Tarmy has incurred harm and loss in an amount in excess of $75,000.00 to be determined.

## COUNT IV
(Tarmy v. CRD)
Wrongful Termination

32. Tarmy repeats and re-alleges the allegations set forth in Paragraphs 1 through 31 above and incorporates them by reference herein.

33. CRD entered into an unambiguous and enforceable contract that required CRD to pay Tarmy wages.

34. CRD terminated Tarmy arbitrarily and in bad faith.

35. Such termination was wrongful and in violation of the covenant of good faith and fair dealing inherent in the Agreement.

36. As a result of CRD's wrongful termination, Tarmy has incurred harm and loss in an amount in excess of $75,000.00 to be determined.

### COUNT V
(Tarmy v. CRD)
Fraud/Misrepresentation/Deceit

37. Tarmy repeats and re-alleges the allegations set forth in Paragraphs 1 through 36 above and incorporates them by reference herein.

38. CRD represented to Tarmy that he would be paid wages in the form of a base pay, CRD securities and commissions on sales.

39. CRD represented that CRD securities were available for payment as wages and that other employees of CRD had been paid with CRD securities.

40. CRD also promised Tarmy that it would pay Tarmy's relocation costs.

41. Tarmy relied upon the representations made by CRD.

42. CRD's representations were false, and made with the intention to deceive Tarmy and induce him to relocate to Massachusetts and join CRD. CRD not only failed to pay Tarmy his wages, but also claimed it did not have stock options to pay Tarmy.

43. As a result of CRD's fraud, misrepresentation and deceit, Tarmy has incurred harm and loss in an amount in excess of $75,000.00 to be determined.

## COUNT VI
(Tarmy v. CRD)
Estoppel

44. Tarmy repeats and re-alleges the allegations set forth in Paragraphs 1 through 43 above and incorporates them by reference herein.

45. CRD promised to pay Tarmy wages and to cover his relocation costs.

46. In reliance of CRD's promises, Tarmy moved his family to Massachusetts, incurred significant moving and storage expenses, and spent considerable sums of money to sell his house in New Jersey and rent a house in Massachusetts.

47. Despite Tarmy's sacrifices, CRD terminated his employment in bad faith.

48. After his termination, Tarmy again incurred expenses in relocating back to New Jersey, finding employment and obtaining medical insurance.

49. Accordingly, CRD is estopped from denying that it promised to pay Tarmy wages and benefits and is estopped from denying Tarmy failed to reach his performance goals.

## Demand For Judgment

WHEREFORE, Plaintiffs prays that this Court enter judgment as follows:

A. Against CRD for the damage far in excess of $75,000.00 owed to the Plaintiffs, plus interest, costs and reasonable attorney fees provided by Massachusetts General Law Chapter 149;

B. Against CRD for treble damages pursuant to Massachusetts Chapter 149;

C. Issue a preliminary injunction enjoining CRD from failing and refusing to pay wages to its present employees;

D. Issue a permanent injunction enjoining CRD from failing and refusing to pay wages to its present and future employees; and

E. Provide such other and further relief as the Court deems just and proper.

Respectfully submitted,
PLAINTIFFS
By their attorney,

Ara J. Balikian (BBO#630576)
Gordon and Balikian, LLP
535 Boylston Street, 6th Floor
Boston, MA 02116
Tel. 617-536-1801
Fax 617-536-1802